IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BOBBY EZELL, #R65015,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No. 3:21-cv-01434-SMY-RJD |
| | ) |
| **AUSTIN NEIBEL,** | ) |
| | ) |
| **Defendant.** | ) |

# REPORT AND RECOMMENDATION

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 73) filed by Defendant Austin Neibel. The motion has been referred to United States Magistrate Judge Reona J. Daly by United States District Judge Staci M. Yandle pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(c) for a Report and Recommendation (Doc. 80). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law and **DENY** the motion as detailed below.

## BACKGROUND

Plaintiff Bobby Ezell is an inmate of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), where his claims arose. In this *pro se* civil action pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendant applied excessive force to him which injured his right arm and hand.

Specifically, Plaintiff alleges that during an institution-wide shakedown on May 12,[1] 2021,

---

[1] The Complaint stated the incident occurred on May 11, 2021, but it was later clarified that the shakedown took place on May 12, 2021. (Docs. 45, 52, 73).

1

he was required to sit handcuffed with his head down for an hour and a half. Defendant Neibel and another officer[2] yanked Plaintiff to his feet with such force that pain shot up his spine and he felt stinging pain and numbness from the right side of his neck down into his fingertips. As a result of the injury inflicted by Neibel, Plaintiff cannot hold or use an ink pen or close his hand due to extreme pain and discomfort. (Doc. 1).

Following screening of the Complaint under 28 U.S.C. § 1915A, Plaintiff is proceeding on the following claim:

> Count 1: Eighth Amendment claim against Austin Neibel, tactical team member on May [12], 2021, for the use of excessive force against Ezell.

Subsequently, Defendant Neibel filed his motion for summary judgment asserting Plaintiff failed to properly exhaust his administrative remedies prior to filing this action (Doc. 73). Plaintiff responded in opposition to the motion (Doc. 77). The Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on August 13, 2024 (Doc. 86). Plaintiff testified via video from Pinckneyville and Defendant appeared by counsel. Defendant's two witnesses and Plaintiff's witness (all Pinckneyville employees) also testified via video.

## FINDINGS OF FACT

### A. *Grievance Records*

Defendant submitted grievance records from Pinckneyville and the Administrative Review Board ("ARB") including the following:

Grievance No. 1506-07-21, dated July 12, 2021: Plaintiff grieves that after sitting in the chow hall for an hour and a half with his hands cuffed behind his back and his chin on his chest, the tact team members tried to stand him up by the handcuffs. They pulled him up so the handcuffs

---

[2] This unknown defendant was dismissed from the action without prejudice when Plaintiff was unable to identify him. (Doc. 56).

went up to the middle of his back, causing a nerve on the right side of his neck to his right arm and fingertips to have a stinging sensation and pain. His right hand cannot function, and he is unable to write. Another inmate wrote the grievance on Plaintiff's behalf. (Doc. 1, p. 12; Doc. 73-1, p. 5; Doc. 77, p. 32). Plaintiff noted that the tact team members were wearing ski masks and made all inmates keep their heads down. *Id.* Plaintiff stated the grievance was being filed late because he was unable to get grievance forms until July 9, 2021 and then had to find another inmate to write it for him because of his injury. (Doc. 1, pp. 11, 13-14; Doc. 73-1, p. 4; Doc. 77, p. 31, 34, 36-37). The grievance was stamped as received on July 14, 2021. (Doc. 1, p. 11).

The grievance was ruled "out of timeframe" on August 1, 2021 (Doc. 1, p. 9; Doc. 73-1, p. 2; Doc. 77, p. 29). Plaintiff appealed to the ARB, which concurred that the grievance was filed too late and refused to address the issue further (Doc. 1, p. 8; Doc. 73-1, p. 1; Doc. 77, p. 28).

### B. Pavey Hearing

Plaintiff testified that after the May 12, 2021 incident with the tact team, he hired other inmates to write request slips to his counselor[3] seeking grievance forms, but never got a response. He asked the C/O for grievances and was told they don't have any and he must contact the counselor. He contacted the counselor at least 30 times. Later in May 2021, Plaintiff saw Counselor Hallman retrieving grievances out of the grievance box on the wing and asked him for a grievance. Hallman asked why Plaintiff needed one. Plaintiff responded it was for the incident where the tact team hurt him and refused him medical attention. Hallman said he would check whether Plaintiff got a disciplinary ticket, and if there was no ticket, he wouldn't need a grievance. Plaintiff referenced the Cumulative Counseling Summary, on which Hallman noted he spoke to Plaintiff on the wing on June 4, 2021 (Plaintiff's Exhibit B, Doc. 77, p. 34; see also Defendant's Exhibit 3,

---

[3] Plaintiff's counselor at the time was Micah Hallman, who also testified.

Doc. 85, p. 2). Plaintiff asked Hallman for three grievances, but Hallman never gave him any. Plaintiff pointed out that according to Illinois Administrative Code 504.810,[4] grievance forms should be made available in all living units. However, during the six years he has been at Pinckneyville, grievance forms have not been available on the wing and security staff refuse to give them out. Plaintiff asked Hallman for help in writing up the grievance because he cannot write due to his hand injury,[5] but this request was denied.

Plaintiff was moved from 4-house to 1-house on June 30, 2021, where King was the counselor. He had some inmates write to King for him to request grievance forms, but he did not get an immediate response. On July 6, 2021, Plaintiff learned King returned from vacation, and Plaintiff got the grievance form from King on Friday night, July 9, 2021. Grievances are only picked up by the counselors Monday through Friday. Plaintiff's cellmate agreed to write the grievance for him. Plaintiff put it into the grievance box at 7:00 in the morning of Monday, July 12, 2021.

Micah Hallman, Correctional Counselor, testified for Defendant. He stated that grievance forms are available in every housing unit by asking any staff member; normally the forms are located in the core area at the officer's desk or in the lieutenant's office. He does not always make a record when he sends an inmate a grievance form and has no reason to deny an inmate a grievance form. He was the counselor for Plaintiff's housing unit in May and part of June 2021. Hallman made the June 4, 2021 entry on the Cumulative Counseling Summary, reflecting that he spoke with Plaintiff and checked to see if he had a ticket (Doc. 85, p. 2). He found that there was no disciplinary ticket. He did not give Plaintiff a grievance form at that time because he thought the

---

[4] 20 ILL. ADMIN. CODE § 504.810.
[5] Plaintiff's forearms were bandaged during the evidentiary hearing, and he took notes using an electronic tablet. He testified that his doctor placed splints/braces on his arms to keep his hands from bending.

matter was resolved when he found Plaintiff had no ticket. It is possible that Plaintiff had written kites to Hallman that were not entered onto the log. He denied that Plaintiff had asked him to help submit a grievance. Grievance No. 1506-07-21 did not go to a counselor, but instead went to the grievance officer for the initial response, because it involved medical issues.

Correctional Counselor Tyler King testified for Defendant. He was Plaintiff's counselor in July 2021 when Plaintiff was in housing unit 1. Inmates can get a grievance form from any staff member in the housing unit, and he provides them in response to kites. Sometimes it takes several days to go through all the kites and respond. King made the note reflecting that Plaintiff requested a grievance and that he sent one through the institutional mail on July 9, 2021 (Doc. 85, p. 2). Grievances are picked up from the locked boxes on the wing daily from Monday through Friday; counselors are off on weekends, so grievances are not picked up on Saturdays and Sundays. Grievances may be picked up as early as 8:00 a.m. and they are usually turned in to the grievance office by 11:00 a.m. or 12:00 p.m. At the grievance office, the counselor places the grievances in the folder for the housing unit. The grievance office staff, not the counselor, logs the grievances after they are received. Grievances may not be processed or logged on the same day they are delivered to the grievance office.

King's last day of work before the July 4, 2021, holiday weekend was July 1, 2021. He was off from Friday, July 2, until his return to work on July 6, 2021. After four days away, there would have been many kites waiting for a response. He responded to Plaintiff's request for grievances on July 9, 2021. King denied that Plaintiff asked him to help him write a grievance.

Correctional Counselor Nathan Shockley testified at Plaintiff's request. He stated that on Plaintiff's current housing unit, 3-house, grievance forms are not stored in a place where inmates can access them whenever they want. Forms are available in the housing unit upon request to a

staff member.

## LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.

When a motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey*, 544 F.3d at 742).

### B. *The PLRA and Illinois Exhaustion Requirements*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022). For a prisoner to exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "[A] suit filed by a

prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dol*e, 438 F.3d at 809.

As an inmate in the Illinois Department of Corrections, Plaintiff was required to follow the grievance procedure outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations require an inmate to file a grievance first with the counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer ("CAO"). 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

Administrative regulations require the grievance "contain factual details regarding each

7

aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.*

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports their findings and recommendations in writing to the CAO. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e). Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023-24.

### CONCLUSIONS OF LAW

Defendant has not met his burden to prove that an administrative remedy was available to Plaintiff but that he failed to pursue it. *See Crouch*, 27 F.4th at 1320. It is undisputed that Plaintiff received the blank grievance form provided by King on Friday afternoon, July 9, 2021, and that completed grievances are picked up each morning, Monday through Friday, but not on weekends. Plaintiff's 60-day deadline to file his grievance over the May 12, 2021, tact team alleged use of force fell on July 11, 2021, a Sunday, when no staff member was available to retrieve the completed grievance. Defendants put on no evidence to refute Plaintiff's testimony that he put

Grievance No. 1506-07-21 into the grievance box in housing unit 1 before 8:00 a.m. on Monday, July 12, 2021. While the grievance was stamped as "received" on July 14, 2021, Counselor King testified that grievances are not always logged or processed on the day they are delivered to the grievance office. Therefore, the July 14, 2021 receipt date does not contradict Plaintiff's testimony that he submitted the form on July 12, 2021. Indeed, the Cumulative Counseling Summary reflects that the grievance was dated July 12, 2021 (Doc. 85, p. 2).

Defendant argues in his motion that Plaintiff "had a grievance form the day before" July 10, 2021,[6] yet he did not draft the grievance until July 12, 2021, which was outside the time frame counting from the correct May 12, 2021 incident date (Doc. 73, p. 5). Defendant states the grievance was not "filed" until July 14, 2021. *Id.* At the evidentiary hearing, defense counsel noted again that Plaintiff got the grievance form on Friday, July 9, 2021. However, counsel then stated, "he could have submitted it the morning of the 12th [the next Monday], and still [be] accepted on time." Counsel argued that instead, it wasn't received by the grievance office until the 14th, and it was denied as untimely.

The Court finds Plaintiff's testimony that he submitted Grievance No. 1506-07-21 early in the morning on Monday, July 12, 2021, to be credible. Because grievances were not retrieved by counseling staff on Saturday, July 10, 2021, or Sunday, July 11, 2021, those days were not available for Plaintiff to initiate the grievance, despite his 60-day deadline falling on Sunday, July 11, 2021. As defense counsel agreed, Monday, July 12, 2021, was the first possible day for Plaintiff to timely submit his grievance, after he received the form late afternoon on Friday, July 9, 2021. The fact that the grievance was not stamped as "received" until July 14, 2021, does not disprove Plaintiff's testimony that he submitted it on July 12, 2021. The Court therefore concludes that

---

[6] Defendants note that Plaintiff's 60-day deadline would have been July 10, 2021, based on Plaintiff's mistaken belief that the incident took place on May 11, 2021 (Doc. 73, p. 5).

Grievance No. 1506-07-21 was timely filed.

Despite this sequence of events, the grievance officer recommended, and the CAO and ARB concurred, that Grievance No. 1506-07-21 was filed "out of timeframe." (Doc. 73-1, pp. 1-2). As such, the merits of this grievance were never considered. Because Plaintiff's grievance reached a dead end upon initial review, the full administrative grievance procedure was rendered unavailable to him. A remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Unavailability does not necessarily have to be caused by the misconduct of the defendants; a process can be unavailable where – as here – an "inmate, through no fault of his own, could not [access] the grievance process." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). The availability of a remedy is a fact-specific inquiry. *See Lanaghan*, 902 F.3d at 688. The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Plaintiff did all he could do to submit Grievance No. 1506-07-21 on time after he received the form from Counselor King. Defendant is not entitled to summary judgment on the timeliness issue.

Turning to Defendant's secondary argument, the Court finds that Grievance No. 1506-07-21 sufficiently grieved Defendant Neibel's conduct. The grievance did not identify Neibel by name because, as Plaintiff explained, the tact team members who pulled him up by his handcuffs were wearing ski masks and made Plaintiff and other inmates keep their heads down with chin on chest. The grievance did, however, explain that the incident occurred in connection with a May 11, 2021,[7] tact team operation where inmates were taken to the chow hall to sit, handcuffed, for an hour and

---

[7] Later clarified to have taken place on May 12, 2021.

30 minutes. The grievance described the alleged force that injured Plaintiff – pulling Plaintiff to his feet by the handcuffs that secured his wrists behind him and lifting the cuffs up to the middle of his back – and noted this occurred as tact team members were removing Plaintiff and the other inmates from the chow hall.

A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.* In this case, Plaintiff included all the necessary information except the tact team members' names. Because the tact team wore masks and inmates were prevented from looking up to see any identifying characteristics, Plaintiff could not offer a physical description. The tact team's activities were recorded on video, which ultimately allowed Plaintiff to identify Neibel as one of the individuals who pulled him up by the handcuffs. Had any investigation been done at the time Plaintiff filed the grievance, the video records and tact team rosters could have been employed to identify the officers involved. The Court finds that Plaintiff's grievance fulfilled the requirements set forth in 20 ILL. ADMIN. CODE § 504.810(c).

### RECOMMENDATION

Based on the above, it is **RECOMMENDED** that the Court **ADOPT** the foregoing findings of fact and conclusions of law and **DENY** the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 73).

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Report and Recommendation within 14 days of service (*see* attached Notice). The failure to file a timely objection may result in the waiver of the

right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**DATED:  August 19, 2024**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**